
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described**.

**Signed February 26, 2010**                                                                 **United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| SYMBIO SOLUTIONS, INC., | § | Case No. 10-30134-BJH-11 |
| | § | |
| Debtor. | § | Hearing Held February 26, 2010 - 2:00 p.m. |

### ORDER (1) APPROVING SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES UNDER SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE; (2) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE; (3) AUTHORIZING REJECTION OF CERTAIN EXECUTORY CONTRACTS; (4) ESTABLISHING CURE AMOUNTS FOR EXECUTORY CONTRACTS TO BE ASSUMED AND ASSIGNED; AND (5) GRANTING RELATED RELIEF

On February 26, 2010, came on for consideration the Motion for Order (1) Authorizing Sale of Assets Free and Clear of Liens, Claims and Encumbrances Under Section 363 of the Bankruptcy Code; (2) Approving Bid and Auction Procedures; (3) Authorizing Assumption and

Assignment of Certain Executory Contracts Pursuant to Section 365 of the Bankruptcy Code and Authorizing Rejection of Certain Executory Contracts; (4) Establishing Certain Notice Procedures for Determining Cure Amounts For Executory Contract and Leases To Be Assigned, and (5) Granting Related Relief (the "Motion") filed by Symbio Solutions, Inc. ("Debtor").

After consideration of the pleadings on file, evidence and arguments of counsel, and it appearing that the relief requested in the Motion is in the best interests of the Debtors, its estate, its creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefore;

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:

A. The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C. The Bankruptcy Court has jurisdiction over this matter and over the property of the Debtor's estate, including the Purchased Assets,[1] pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to the in the Asset Purchase Agreement (as defined below).

D. The Purchased Assets constitute property of the Debtor's estate within the meaning of section 541(a) of title 11 of the United States Code (the "Bankruptcy Code").

E. The statutory predicates for the relief sought in the Motion and the basis for the approvals and authorizations herein are (i) sections 102, 105, 363, and 365 of the Bankruptcy Code and (ii) Bankruptcy Rules 2002, 6004, 6006, and 9014.

F. Adequate and sufficient notice of the Motion, the Sale Hearing, the Asset Purchase Agreement, the identity of the Purchaser, and the proposed entry of this Sale Order have been provided in accordance with sections 102(1) and 363(b) of the Bankruptcy Code, the Local Rules, and Bankruptcy Rules 2002, 6004, and 6006, including adequate and sufficient notice of the assumption and assignment of the Assumed Contracts. No other or further notice of the Motion, the Sale Hearing, the Asset Purchase Agreement, or of the entry of this Sale Order is necessary or shall be required. A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities.

G. The conditions of section 363(m) of the Bankruptcy Code have been satisfied.

H. The offer of the Purchaser, upon the terms and conditions set forth in the Asset Purchase Agreement, including the form and total consideration to be realized by the Debtor pursuant to the Asset Purchase Agreement, (i) is the highest and best offer received by the Debtor; (ii) is fair and reasonable; (iii) is in the best interests of the Debtor's estate and creditors; (iv) constitutes full and adequate consideration and reasonably equivalent value for the Purchased Assets; and (v)

will provide a greater recovery for the Debtor's creditors and other interested parties than would be provided by any other practically available alternative, including without limitation, in a liquidation sale.

I.  The Purchaser is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of sections 363(m) of the Bankruptcy Code with respect to all of the Purchased Assets, and neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the Asset Purchase Agreement or any or all of the transactions contemplated thereunder to be avoided or for the imposition of costs or damages pursuant to section 363(n) of the Bankruptcy Code.

J.  The Debtor has full power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the sale of the Purchased Assets has been duly and validly authorized by all necessary authority by the Debtor to consummate the transactions contemplated by the Asset Purchase Agreement.  No consents or approvals, other than as may be expressly provided for in the Asset Purchase Agreement, are required by the Debtor to consummate such transactions.

K.  The Debtor has demonstrated that it is an exercise of its sound business judgment to assume and assign the Assumed Contracts to the Purchaser, and the assumption and assignment thereof is in the best interest of the Debtor, its estate and creditors. The Assumed Contracts are an integral part of the Purchased Assets without which the Purchaser would refuse to consummate the Closing under the Asset Purchase Agreement, and accordingly such assumption and assignment is

reasonable and enhances the value of the Debtor's estate. The Debtor has cured or provided adequate assurance of cure of any defaults existing or occurring on or prior to the Closing Date under all of the Assumed Contracts within in the meaning of sections 365(b)(1) of the Bankruptcy Code and provided compensation or adequate assurance of compensation or to any party for pecuniary lose resulting to a counterparty under any of the Assumed Contracts within the meaning of section 365(b)(1) of the Bankruptcy Code.

L. The Purchased Assets shall be sold free and clear of all liens, claims, encumbrances, and other interests (collectively, the "Liens"), with such Liens to attach to the consideration to be received by the Debtor from the sale of the Purchased Assets in the same priority and subject to the same defenses and avoidability, if any, as before the Closing, and the Purchaser would not enter into the Asset Purchase Agreement to purchase the Purchased Assets otherwise.

M. The Debtor may sell the Purchased Assets free and clear of all Liens, of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code have been satisfied. All persons having Liens of any kind or nature whatsoever against or in the Debtor or the Purchased Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Liens against the Purchaser, any of their assets, property, successors or assigns, or the Purchased Assets.

N. The transfer of the Purchased Assets to the Purchaser is a legal, valid, and effective transfer of the Purchased Assets, and shall vest the Purchaser with all

right, title, and interest of the Debtor to the Purchased Assets free and clear of any and all Liens.

O. Cause has been shown as to why this Sale Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

P. The transactions contemplated under the Asset Purchase Agreement do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtor and/or the Debtor's estate, there is not substantial continuity between the Purchaser and the Debtor, there is no common identity between the Debtor and the Purchaser, there is no continuity of enterprise between the Debtor and the Purchaser, the Purchaser is not a mere continuation of the Debtor or its estate, and the Purchaser does not constitute a successor to the Debtor or its estate. Other than the Assumed Obligations, the Purchaser shall have no obligations with respect to any liabilities of the Debtor.

Q. The total consideration provided by the Purchaser for the Purchased Assets is the highest and best offer received by the Debtor, and the Purchase Price constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act; (ii) fair consideration under the Uniform Fraudulent Conveyance Act; and (iii) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Purchased Assets.

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY:

**ORDERED** that the relief requested in the Motion is hereby GRANTED to the extent provided herein; it is further

**ORDERED** that the sale of assets to the Purchaser upon the terms and conditions set forth in that certain Asset Purchase Agreement, dated effective as of February 19, 2010 (the "Asset Purchase Agreement"), between the Purchaser and the Debtor is hereby authorized and approved; it is further

**ORDERED** that the Cure Amounts for the executory contracts as set forth on Exhibit "A" attached to this Sale Order are hereby approved; it is further

**ORDERED** that the Debtor's assumption and assignment to the Purchaser of the executory contracts set forth on Exhibit "B" is hereby approved; it is further

**ORDERED** that the Debtor's rejection of the executory contracts set forth on Exhibit "C" is hereby approved; it is further

**ORDERED** that the Purchaser is hereby granted and is entitled to all of the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code; it is further

**ORDERED** that upon the occurrence of the Closing, this Sale Order shall be considered and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of good and marketable, indefeasible title and possession of the Purchased Assets acquired by the Purchaser under the Asset Purchase Agreement and/or under a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to the Purchaser; it is further

**ORDERED** that except as expressly provided in the Asset Purchase Agreement, the Purchaser is not assuming nor shall it or any Affiliate of the Purchaser be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtor in any way whatsoever relating to or arising from the Debtor's ownership or use of the Purchased Assets prior to the consummation of the transactions contemplated by the Asset Purchase

Agreement, or any liabilities calculable by reference to the Debtor or its operations or the Purchased Assets, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Asset Purchase Agreement, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against the Purchaser or any affiliate of the Purchaser; it is further

**ORDERED** that the sale of the Purchased Assets pursuant to this Sale Order is free and clear of all Liens, with any such Liens to follow and attach to the proceeds of sale to the same extent, validity, priority and subject to the same avoidance, if any, as the Liens existed against the Purchased Assets. Following the Closing Date, no holder of any Liens in the Purchased Assets may interfere with the Purchaser's use and enjoyment of the Purchased Assets based on or related to such Liens or take any action to enforce any Liens against the Purchaser or the Purchased Assets. No person may take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Asset Purchase Agreement or this Sale Order; it is further

**ORDERED** that the Debtor shall retain all proceeds of sale of the Purchased Assets pursuant to this Sale Order (as well as the Excluded Assets) and Debtor shall not disburse or utilize such proceeds in any manner pending further order of this Court; *provided*, *however*, $53,308.68 of the proceeds shall be used to pay ad valorem taxes for 2009 at the sale closing and $53,308.68 of the proceeds shall be held by the Debtor pending final determination of the amount owed to Dallas County for ad valorem business personal property taxes for 2010 (which liability shall be allocated between Debtor and Purchaser consistent with the Asset Purchase Agreement) as adequate protection of Dallas County's liens that secure such assets. The amount

of these funds is not determinative of the amount owed for tax year 2010 and Dallas County is not limited solely to these funds for payment of its claim; It is further

**ORDERED** that the Debtor is authorized to execute such documents and take such actions as are reasonably necessary to carry out the purposes and intent of this Sale Order and the Debtor and the Purchaser are authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Asset Purchase Agreement, any related agreements and this Sale Order. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Sale Order shall constitute all approvals and consents, if any, required by all applicable business corporations, trust, and other laws of the applicable governmental units with respect to the implementation and consummation of the Asset Purchase Agreement, any related agreements, and this Sale Order; it is further

**ORDERED** that effective as of the Closing, (a) the sale of the Purchased Assets by the Debtor to the Purchaser shall constitute a legal, valid, and effective transfer of the Purchased Assets, notwithstanding any requirement for approval or consent by any person, and (b) the assumption of any Assumed Obligations by the Purchaser constitutes a legal, valid and effective delegation of any Assumed Obligations to the Purchaser and divests the Debtor of all liability with respect to any such Assumed Obligations; it is further

**ORDERED** that all entities who are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of said Purchased Assets to the Purchaser on the Closing Date; it is further

**ORDERED** that other than the Assumed Obligations or as otherwise provided for in the Asset Purchase Agreement, the Purchaser shall have no obligations with respect to any liabilities of the Debtor; it is further

**ORDERED** that subject to the terms of the Asset Purchase Agreement, the Asset Purchase Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtor and the Purchaser, without further action or order of the Bankruptcy Court; provided, however, that any such waiver, modification, amendment, or supplement is neither material nor changes the economic substance of the transactions contemplated hereby and substantially conforms to, and effectuates, the Asset Purchase Agreement and any related agreements; it is further

**ORDERED** that the failure specifically to include any particular provisions of the Asset Purchase Agreement or any related agreements in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court, the Debtor, and the Purchaser that the Asset Purchase Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Sale Order prior to closing; and it is further

**ORDERED** that to the extent any provisions of this Sale Order conflict with the terms and conditions of the Asset Purchase Agreement, this Sale Order shall govern and control; it is further

**ORDERED** that this Sale Order and the Asset Purchase Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtor and the Purchaser, their respective successors and permitted assigns, including, without limitation, any trustee appointed in a chapter 7 case if the Debtor's case is converted from chapter 11, all

creditors and equity holders of the Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets; it is further

**ORDERED** that the fourteen (14) day stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived and the Debtor is authorized to close the sale in accordance with the terms of the Asset Purchase Agreement on or before March 1, 2010; and it is further

**ORDERED** that this Court shall retain jurisdiction over any matter or dispute arising from or relating to this Sale Order.

### End of Order ###

APPROVED AS TO FORM AND SUBSTANCE:

GOODRICH POSTNIKOFF &
ALBERTSON, LLP
777 Main Street, Suite 1360
Fort Worth, Texas 76102
Telephone: 817.347.5261
Facsimile: 817.335.9411


By: /s/ Joseph F. Postnikoff
    Joseph F. Postnikoff
    State Bar No. 16168320
    Jason T. Jones
    State Bar No. 24065515

COUNSEL FOR DEBTOR IN POSSESSION


and


FRANKLIN SKIERSKI LOVALL HAYWARD LLP
10501 N. Central Expressway, Suite 106
Dallas, Texas 75231
Telephone: 972.755.7100
Facsimile: 972.755.7110


By: /s/ Melissa S. Hayward
    Melissa S. Hayward
    State Bar No. 24044908

COUNSEL FOR SUN CAPITAL, INC.


and

_____
In re Symbio Solutions, Inc.
**ORDER APPROVING SALE**
- 12 -

WRIGHT GINSBERG BRUSILOW, P.C.
Republic Center, Suite 4150
325 N. St. Paul Street
Dallas, Texas 75201
Telephone: 214.651.6517
Telecopy: 214.744.2615


By: /s/ E. P. Keiffer
    E. P. Keiffer
    State Bar No. 11181700

COUNSEL FOR THE OFFICIAL
UNSECURED CREDITORS' COMMITTEE


and


LINEBARGER, GOGGAN, BLAIR & SAMPSON, LLP
2323 Bryan St., Ste 1600
Dallas, Texas 75201
Telephone: 469.221.5125.
Fax: 469.221.5002


By: /s/ Laurie Spindler Huffman
    Laurie Spindler Huffman
    State Bar No. 24028720

COUNSEL FOR DALLAS COUNTY

# Exhibit "A"

# SCHEDULE OF HOSPITAL AND HEALTH CARE FACILITY CONTRACTS AND CURE AMOUNTS

**VENDOR MANAGEMENT SERVICES CONTRACTS**

Baptist Health System
Address: 215 Quincy, Suite 200, San Antonio, Texas 78215
Cure Amount: $0

Cooper Health System
Address: One Cooper Plaza, Camden, New Jersey 08103
Cure Amount: $0

Delta Regional Medical Center
Address: 1400 East Union, P.O. Box 5247, Greenville, Mississippi 38704
Cure Amount: $0

Gila River Healthcare
Address: P.O. Box 38, Sacaton, Arizona 85247
Cure Amount: $0

Helen Ellis Medical Center
Address: 1395 S. Pinellas Avenue, Tarpon Springs, Florida 34689
Cure Amount: $0

Henry Mayo Memorial
Address: 23845 McBean Parkway, Valencia, California 91355
Cure Amount: $0

Kaleida Healthcare
Address: 100 High Street, Buffalo, New York 14203
Cure Amount: $0

Promise Healthcare
Address: 999 Yamato Road, 3rd Floor, Boca Raton, Florida 33431
Cure Amount: $0

Regency Healthcare
Address: 30000 Mill Creek Avenue, Suite 250, Alpharetta, Georgia 30022
Cure Amount: $0

Thomas Jefferson University
Address: 201 South 11th Street, Philadelphia, PA 19107-5595
Cure Amount: $0


**SCHEDULING SERVICES CONTRACTS**

Bartow Regional
Address: 316 N. Broad Street, Winder, Georgia 30680-2150
Cure Amounts: $0

Coon Memorial
Address: 1411 Denver Avenue, Dalhart, Texas 79022-4809
Cure Amount: $0

Promise Specialty Hospitals
Address: 999 Yamato Road, 3rd Floor, Boca Raton, Florida 33431
Cure Amount: $0

Riverside General Hospital
Address: 3204 Ennis Street, Houston, Texas 77004
Cure Amount: $0

Texas Scottish Rite
Address: 2222 Welborn Street, Dallas, Texas 75219-3993
Cure Amount: $0

# Exhibit "B"

# SCHEDULE OF CONTRACTS TO BE ASSUMED

**Human Capital Management Automation System Marketplace Client Agreements**

HCMA Market Place Client Agreement between Symbio Solutions, Inc., and Promise Healthcare, effective as of December 31, 2003.

HCMA Market Place Client Agreement between Symbio Solutions, Inc., and Regency Hospital Company, effective as of January 1, 2006, as amended.

HCMA Market Place Client Agreement between Symbio Solutions, Inc., and Delta Region Medical Center, effective as of December 1, 2006.

HCMA Market Place Client Agreement between Symbio Solutions, Inc., and Helen Ellis Memorial Hospital, effective as of January 5, 2007.

**VMS Client Agreements**

Vendor Management Services Client Agreement between Symbio Solutions, Inc. and Kaleida Health, effective as of September 15, 2008, as amended.

Vendor Management Services Client Agreement between Symbio Solutions, Inc. and VHS San Antonio Partners L.P. d/b/a Baptist Health System of San Antonio, effective as of November 25, 2008, as amended.

Vendor Management Services Client Agreement between Symbio Solutions, Inc. and Henry Mayo Newhall Memorial Hospital, effective as of March 1, 2009, as amended.

Vendor Management Services Client Agreement between Symbio Solutions, Inc. and The Cooper Health System, effective as of June 2, 2009.

**Workforce Management Services Agreements**

Workforce Management Services Agreement between Symbio Solutions, Inc. and Promise Healthcare, Inc., effective as of September 1, 2007.

Workforce Management Services Agreement between Symbio Solutions, Inc. and Dallam-Hartley Counties Hospital District dba Coon Memorial Hospital & Home, effective as of _____ __, 2009.

Workforce Management Services Agreement between Symbio Solutions, Inc. and Texas Scottish Rite Hospital for Children, effective as of October 15, 2009.

**<u>Workforce Scheduling Agreements</u>**

Workforce Scheduling Agreement between Symbio Solutions, Inc. and Bartow Regional Medical Center, effective as of October 15, 2009.

# Exhibit "C"

# SCHEDULE OF CONTRACTS AND UNEXPIRED LEASES OF PERSONAL PROPERTY TO BE REJECTED

**Customer Contracts**:

HCMA Market Place Client Agreement between Symbio Solutions, Inc., and the University of Utah, on behalf of its University Healthcare Hospitals and Clinics, effective as of November 1, 2006, as amended.

HCMA Market Place Client Agreement between Symbio Solutions, Inc., and Geisinger Medical Center, effective as of January 21, 2008.

Vendor Management Services Client Agreement between Symbio Solutions, Inc. and Riverside General Hospital, effective as of December 16, 2008.

Workforce Management Services Agreement between Symbio Solutions, Inc. and Riverside General Hospital, effective December 16, 2008.

**Unexpired Leases of Personal Property**:

Avaya Financial Services
Address:   Post Office Box 550599
           Jacksonville, FL  32255-0599
Type of Lease:  Phone System
Cure Amount:  $54,125.09

CIT Office and Technology Finance
Address:   P.O. Box 1638
           Livingston, NJ  07039
Type of Lease:  One (1) Copier
Cure Amount:  $5,512.32

Tygris Commercial Finance
Address:   Department 1608
           Denver, CO  80291
Type of Lease:  Two (2) NEC Color Copiers
Cure Amount:  $5,512.32